# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TANIEA TOOMER,

        Plaintiff,

   v.

CAMDEN COUNTY CORRECTIONAL
FACILITY,

        Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 17-cv-0197(JBS-AMD)

**OPINION**

APPEARANCES:
Taniea Toomer, Plaintiff Pro Se
3227 Carroll Court
Camden, NJ 08104

**SIMANDLE, District Judge:**

## I.   <u>INTRODUCTION</u>

1.    Plaintiff Taniea Toomer seeks to bring a civil rights Complaint pursuant to 42 U.S.C. § 1983 against Camden County Correctional Facility ("CCCF") for allegedly unconstitutional conditions of confinement. Complaint, Docket Entry 1.

## II.  <u>STANDARD OF REVIEW</u>

2.    28 U.S.C. § 1915(e)(2) requires courts to review complaints prior to service in cases in which a plaintiff is proceeding *in forma pauperis*. Courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from

a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis*.

3.     For the reasons set forth below, the Court will: (1) dismiss the Complaint with prejudice as to claims made against CCCF; and (2) dismiss the Complaint without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

## III. **DISCUSSION**

### A. **Claims Against CCCF: Dismissed With Prejudice**

4.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983[1] for alleged violations of Plaintiff's constitutional rights. In order to set forth a *prima facie* case under § 1983, a plaintiff must show: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)).

5.     Generally, for purposes of actions under § 1983, "[t]he term 'persons' includes local and state officers acting

---

[1] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

under color of state law." *Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir. 1996) (citing *Hafer v. Melo,* 502 U.S. 21 (1991)).[2] To say that a person was "acting under color of state law" means that the defendant in a § 1983 action "exercised power [that the defendant] possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). Generally, then, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50.

6.  Because the Complaint has not sufficiently alleged that a "person" deprived Plaintiff of a federal right, the Complaint does not meet the standards necessary to set forth a *prima facie* case under § 1983. In the Complaint, Plaintiff seeks monetary damages from CCCF for allegedly unconstitutional conditions of confinement. The CCCF, however, is not a "person" within the meaning of § 1983; therefore, the claims against it must be dismissed with prejudice. *See Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity

---

[2] "Person" is not strictly limited to individuals who are state and local government employees, however. For example, municipalities and other local government units, such as counties, also are considered "persons" for purposes of § 1983. *See Monell*, 436 U.S. at 690-91.

subject to suit under 42 U.S.C. § 1983.") (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Given that the claims against the CCCF must be dismissed with prejudice, the claims may not proceed and Plaintiff may not name the CCCF as a defendant.

7.    Plaintiff may be able to amend the Complaint to name a person or persons who were personally involved in the alleged unconstitutional conditions of confinement, however. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 60 days after the date this Opinion and Order are entered on the docket.

   **B. Conditions Of Confinement Claims: Dismissed Without Prejudice**

       **i.** Overcrowded Conditions Of Confinement

8.    Plaintiff alleges that "[d]uring my period of incarceration at Camden County there were various dates . . . from 11-30-15 [to] 12-9-15 . . . I had to sleep on the floor. There wasn't enough room to sleep on the bed. There was a time I had to sleep under the eating table that was placed inside the cell" (hereinafter referred to as Plaintiff's "Overcrowding Claim"). Complaint § III(C).

9.    As explained below, the Court will dismiss the Overcrowding Claim without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii). The Complaint does not allege sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915. The Court will accept as true for screening purposes only the statements in Plaintiff's Complaint, but there is not enough factual support for the Court to infer that an unconstitutional overcrowding violation has occurred.

10.    To survive *sua sponte* screening for failure to state a claim[3], the Complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Samuels v. Health Dep't*, No. 16-1289, 2017 WL 26884, slip op. at *2 (D.N.J. Jan. 3, 2017) (citing *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

n.3 (3d Cir. 2014). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

11. A complaint must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.

12. However, with respect to the alleged facts giving rise to Plaintiff's claims, the Complaint states: "Most of my stay in 7-day holding[,] there were 4 – 5 females in one room . . . I had to sleep on the floor" on these dates: "11-30-15 – 12-9-15." Complaint § III(B), § III(C); Docket Entry 1 at 5.

13. The Complaint alleges that Plaintiff suffered "problems of breathing" and being "short of breath[]" from "asthma" during these events. Docket Entry 1 at 5; Complaint § IV.

14. Plaintiff seeks compensatory relief for "pain and suffering." *Id.* § V.

15.    Even construing the Complaint as seeking to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 for alleged prison overcrowding, any such purported claims must be dismissed because the Complaint does not set forth sufficient factual support for the Court to infer that a constitutional violation of overcrowding has occurred.

16.    The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348–50 (1981) (holding double-celling by itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 542 (1979))). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, shocks the conscience and thus violates due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) ("*Hubbard II*") (noting due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them") (citing *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d

984, 992 (3d Cir. 1983) (quoting *Bell*, 441 U.S. at 542)). Some relevant factors are the length of the confinement(s), whether plaintiff was a pretrial detainee or convicted prisoner, any specific individuals who were involved in creating or failing to remedy the conditions of confinement, any other relevant facts regarding the conditions of confinement, etc.

17.  Plaintiff may be able to amend the Complaint to particularly identify adverse conditions that were caused by specific state actors, that caused Plaintiff to endure genuine privations and hardship over an extended period of time, and that were excessive in relation to their purposes. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 60 days after the date this Opinion and Order are entered on the docket.[4]

18.  Plaintiff is further advised that any amended complaint must plead specific facts regarding the overcrowded conditions of confinement. In the event Plaintiff files an amended complaint, Plaintiff must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.

---

[4] The amended complaint shall be subject to screening prior to service.

19.  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court in this Opinion and accompanying Order.

### ii. Inadequate Medical Care

20.  Plaintiff contends that she "wasn't able to see a doctor about my problems with breathing during this time" and was "short of breath[]" (referred to hereinafter as "Medical Care Claim"). Complaint at 5 and § IV.

21.  Given that such allegations are insufficient to plead unconstitutional conditions of confinement as to the adequacy of medical care, the Court will dismiss the Medical Care Claim without prejudice.

9

22.  The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atlantic City*, 179 F. Supp.3d 387, 403 (D.N.J. 2016). "[T]he Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment" (*Holder v. Merline*, No. 05-1024, 2005 WL 1522130, at *3 (D.N.J. June 27, 2005) (citing *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1067 (3d Cir. 1991), *cert. denied,* 503 U.S. 985 (1992)), and most cases have stated that, at a minimum, the Eighth Amendment's "deliberate indifference" standard will suffice. In other words, substantive due process rights are violated only when the behavior of the government official is so egregious and outrageous that it "shocks the conscience." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)).

23.  Applying this principle in the context of a claim for violation of the right to adequate medical care, a pretrial detainee must allege the following two elements to set forth a cognizable cause of action: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

24. To satisfy the first prong of the *Estelle* inquiry, an inmate must demonstrate that her medical needs are serious. The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this first element under *Estelle,* courts consider factors such as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp.2d 284, 289 (D.N.J. 1998).

25. The second element of the *Estelle* test is subjective and "requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need." *Holder*, 2005 WL 1522130, at *4 (citing *Natale*, 318 F.3d at 582) (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). Conduct that constitutes negligence does not rise to the level of deliberate indifference; rather, deliberate indifference is a "reckless disregard of a known risk of harm." *Holder*, 2005 WL

1522130, at *4 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Courts have found deliberate indifference "in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence[,] *Nicini v. Morra*, 212 F.3d 798, 815 n. 14 (3d Cir. 2000) [and] in situations where 'necessary medical treatment is delayed for non-medical reasons.' *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)[,] [*cert. denied*, 486 U.S. 1006 (1988)]." *Natale*, 318 F.3d at 582.

26.    Here, Plaintiff's non-specific assertions regarding "problems of breathing" and being "short of breath[]" (Complaint at 5 and § IV) are insufficient to meet this pleading standard. Plaintiff offers no facts to satisfy either of the two prongs required for her Medical Care Claim. *Estelle*, 429 U.S. at 106; *Natale*, 318 F.3d at 582.

27.    First, the Complaint is silent with respect to facts relevant to establishing *Estelle*'s "serious condition" element, demonstrating that Plaintiff's supposed "asthma" (Complaint § IV): "(1) has been diagnosed by a physician as requiring treatment"; (2) "was so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) was a condition for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long

12

handicap or permanent loss." *Atkinson*, 316 F.3d at 272-73. The Complaint omits facts required to demonstrate "serious condition," such as: the nature, symptoms, and severity of Plaintiff's asthma; Plaintiff's medical history as to frequency, duration and treatment of her asthma; and health complications (if any) suffered by Plaintiff as a result of allegedly denied medical care. (The foregoing examples of facts demonstrating "serious condition" are merely illustrative but not exhaustive or exclusive.) In short, Plaintiff does not allege that she has ever actually been diagnosed with asthma, or that her supposed suffering from this condition was so obvious that a lay person would recognize the necessity of medical care. Accordingly, Plaintiff has not satisfied *Estelle*'s "serious condition" element for a Fourteenth Amendment claim.

28. Second, Plaintiff has not alleged any facts suggesting deliberate indifference by any defendant to satisfy *Estelle*'s subjective prong, under which Plaintiff must demonstrate that prison officials acted with "deliberate indifference to h[er] serious medical need[s]." *Holder*, 2005 WL 1522130, at *4 (citing *Natale*, 318 F.3d at 582). For example, Plaintiff here sets forth no allegations as to whether any defendant deliberately ignored her non-specific "problems of breathing" (Complaint at 5) without justification or with the intent to punish Plaintiff. *See*, *e.g.*, *Mattern v. City of Sea Isle*, 131 F. Supp.3d 305, 316

(D.N.J. 2015) (citing *Nicini*, 212 F.3d at 815 n.14) ("[T]he

Third Circuit has found deliberate indifference in situations

where there was 'objective evidence that [a] plaintiff had

serious need for medical care,' and prison officials ignored

that evidence"). Furthermore, the Complaint does not set forth

any contentions that are necessary to describe how individual

defendants were personally involved with and deliberately

indifferent to Plaintiff's purportedly serious medical needs.

Plaintiff's bare allegation that she "was told to fill out a

grievance . . . about my problems of breathing . . . and someone

would get back to me but it never happened" (Complaint at 5) is

insufficient, without more, to establish "deliberate

indifference" for a Fourteenth Amendment claim under *Estelle.*

*See Parkell v. Markell*, 662 F. App'x 136, 142 (3d Cir. 2015)

(plaintiff "had no constitutionally protected liberty interest

in receiving a particular result through the prison grievance

process").

29.  Therefore, the Court finds that Plaintiff's Medical

Care Claim has failed to state a cause of action under the

Fourteenth Amendment. Such claim will be dismissed without

prejudice and with leave to amend the Complaint, within 60 days

after the date this Opinion and Order are entered on the docket,

to meet the pleading deficiencies noted above, if Plaintiff

elects to pursue this claim with respect to deliberate

indifference to a serious asthmatic condition. The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court in this Opinion and accompanying Order.

### iii. Plumbing Conditions

30.   Plaintiff contends that "for about 2 days the toilets were stopped up and the water had to be turned off[.] [W]e couldn't wash our hands or faces and there was a bucket placed in the room for us to use to go to the bathroom. [T]oilet paper and feces was at sometime [*sic*] coming out of the toilet . . . After the toilets were overflowing the smell was terrible causing us to wrap part of our blanket and towels over our faces" (referred to hereinafter as "Plumbing Conditions Claim"). Complaint § III(C). For the reasons set forth below, the Plumbing Conditions Claim shall be dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

31.   A failure of prison officials to provide minimally civil conditions of confinement to pre-trial detainees violates their right not to be punished without due process of law. *Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997); *Monmouth Cnty.*, 834 F.2d at 345-46, n. 31; *Estelle*, 429 U.S. at

104; *Farmer*, 511 U.S. at 835.[5] Pursuant to the Fourteenth

Amendment's Due Process Clause, prison officials must satisfy

"basic human needs -- *e.g.*, food, clothing, shelter, medical

care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25,

32 (1993). *See also Mora v. Camden Cnty.*, No. 09-4183, 2010 WL

2560680, at *8 (D.N.J. June 21, 2010) (applying *Helling* to

pretrial detainee). However, "a detainee seeking to show

unconstitutional conditions of confinement must clear a 'high

bar' by demonstrating 'extreme deprivations.'" *Cartegena v.*

*Camden Cnty. Corr. Facility*, No. 12-4409, 2012 WL 5199217, at *3

(D.N.J. Oct. 19, 2012) (citing *Chandler v. Crosby*, 379 F.3d

1278, 1298 (11th Cir. 2004)).

    32.  When pretrial detainees complain about the conditions

of their confinement, courts are to consider, in accordance with

the Fourteenth Amendment, whether the conditions "amount to

punishment prior to an adjudication of guilt in accordance with

law." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005)

---

[5] "[T]he Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner" (*Reynolds*, 128 F.3d at 173), and so the Eighth Amendment sets the floor for the standard applicable to pre-trial detainees' claims. *Bell*, 441 U.S. at 544. *Accord Hubbard I*, 399 F.3d at 165-67 (the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees). Pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners with respect to the conditions of their confinement. *Bell*, 441 U.S. at 545; *Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005); *Natale*, 318 F.3d at 581-82.

("*Hubbard I*"). In making such a determination, courts consider: (a) whether any legitimate purposes are served by the conditions at issue, and (b) whether those conditions are rationally related to those purposes. *Hubbard II*, 538 F.3d at 232 (quoting *DiBuono*, 713 F.2d at 992). Courts must inquire as to whether the conditions "'cause [detainees] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Hubbard I*, 399 F.3d at 159-60 (citations omitted).

33.   The objective component of this unconstitutional punishment analysis examines whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 538-39, n.20), *cert. denied*, *Phelps v. Stevenson*, 552 U.S. 1180 (2008).

34.   With regard to the objective prong, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 347. "To the extent that conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

35.   Here, allegations about the Plumbing Conditions do not satisfy either prong of this constitutional analysis.

36.  As to the objective prong, denial of the "minimal civilized measure of life's necessities" (*Rhodes*, 452 U.S. at 347), which would include basic sanitary conditions, can be sufficient to state an actionable constitutional deprivation. However, as explained below, allegations of "about 2 days" of "stopped up" toilets and "water turned off" (Complaint § III(C)) do not allege the sort of extreme deprivation and hardship sufficient to constitute an unconstitutional condition of confinement.

37.  Courts' "inquiry into whether given conditions constitute 'punishment' must consider the totality of circumstances within an institution." *Hubbard I*, 399 F.3d at 160. Here, considering that totality as set forth in the Complaint, Plaintiff does not set forth an egregious deprivation of Plaintiff's basic human needs.

38.  For example, the Complaint is silent regarding: whether "the toilets" (Complaint § III(C)) at issue were the units inside Plaintiff's cell at CCCF or were part of the public facility for the CCCF prison population generally; whether alternate restroom facilities were made available to Plaintiff to account for the non-operational units of which she complains; whether alternative provisions other than sinkwater were made for detainees to wash their hands before meals; and the reason for the non-functioning nature of the toilets referred to in the

18

Complaint (*e.g.*, plumbing maintenance work schedule, plumbing malfunction, intentional wrongdoing by any inmates, etc.). Such considerations are part of the "totality of circumstances" to be considered for the objective prong of this analysis. *Hubbard I*, 399 F.3d at 160. If, for example, water was turned off in the facility for maintenance purposes, "courts will generally not interfere with prison administrative matters and will afford significant deference to judgments of prison officials regarding prison regulation and administration. *See, e.g., Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ('Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators')." *Passmore v. Ianello*, 528 F. App'x 144, 149 (3d Cir. 2013).

39.  In addition, "about 2 days" (Complaint § III(C)) is not an inordinate or unreasonable amount of time for purposes of the objective prong of the Fourteenth Amendment constitutional analysis.

40.  The length of exposure to allegedly unsanitary conditions or deprivations is one consideration in evaluating the objective prong of a claim of unconstitutional conditions of confinement. As the Supreme Court has emphasized: "[T]he length of confinement cannot be ignored in deciding whether the

confinement meets constitutional standards. A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). Thus, the duration of the alleged Plumbing Conditions is relevant to examination of the totality of circumstances, but the Complaint does not suggest that Plaintiff was subjected to genuine privations and hardships over an extended period of time.

41.   A duration of "about 2 days" (Complaint § III(C)) of the Plumbing Conditions is not a lengthy, ongoing, or consistent condition of confinement. Plaintiff's allegation of approximately 48 hours of toilet and water access issues does not rise to the level of a constitutional deprivation.

42.   Courts' emphasis on conditions' time duration as critical to the constitutional analysis is instructive here, including rejection of claims in cases alleging unconstitutionally unsanitary conditions that not only lasted longer but were also substantially worse than those of which Plaintiff complains here. *See*, *e.g.*, *Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.*, 547 F. App'x 96, 97 (3d Cir. 2013) (holding that, although failure by police "for a few hours" to provide adequate sanitary conditions "may have resulted in discomfort," it was "not sufficiently serious" to violate arrestee's constitutional rights); *Adderly v. Ferrier*,

419 F. App'x 135, 139 (3d Cir. 2011) (deprivation of clothing, toiletries, legal mail, pillow, mattress, and shower for seven days was harsh but not a deprivation of the minimal civilized measure of life's necessities); *McCray v. Wittig*, No. 14-0824, 2014 WL 1607355, at *3 (D.N.J. Apr. 24, 2014) (holding that "[b]ecause Plaintiff was confined in the holding cell under deplorable conditions for only two days . . . without bedding, cleaning supplies, articles of personal hygiene or adequate food . . ., and he did not suffer any physical injury, his allegations do not show that he was unconstitutionally punished, *i.e.,* the facts alleged in the Complaint do not show that Plaintiff endured privation and hardship over an extended period of time") (citing *Bell*, 441 U.S. at 537); *Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001) (four-day period of toilet deprivation could constitute substantial deprivation); *Davis v. Scott*, 157 F.3d 1003, 1004 (5th Cir. 1998) (inmate being placed in a cell that was "just filthy with blood on the walls and excretion on the floors and bread loaf on the floor" for three days did not meet the objective component of the Eighth Amendment); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (holding that an inmate's confinement in a cell for four days with an overflowing toilet, during which time he was "made to endure the stench of [his] own feces and urine," did not rise to the level of a constitutional

violation); *Lafaut v. Smith*, 834 F.2d 389 (4th Cir. 1987) (no handicap accessible toilet for handicapped inmate for eight months constituted substantial deprivation); *George v. Faber*, No. 09-962, 2010 WL 2740299, at *4 (D. Del. July 12, 2010) (dismissing conditions of confinement claim as frivolous where, *inter alia*, plaintiff had "no running water [and] no toilet (just a hole in the ground)" and a "cell with no toilet paper and lack of water" from "September 2009 until February 2010"); *Qawi v. Howard*, No. 98-220-GMS, 2000 WL 1010281, at *2 (D. Del. July 7, 2000) ("Under certain circumstances, the denial of access to toilet facilities may give rise to a[] [constitutional] violation. However, such violations have generally been found only when the duration of the deprivation is sufficiently long, or when the deprivation is an ongoing condition of confinement rather than the result of an isolated incident . . . These cases, however, generally involve challenges to the *regular operating conditions* of the prison— *i.e.*, situations where under the everyday rules regarding access to toilets, inmates are frequently forced to urinate and defecate in their cells, often requiring them to eat and sleep in unsanitary conditions") (emphasis in original).

43. The Plumbing Conditions in this case "[may] no doubt [have been] unpleasant, [but they] d[id] not pose an obvious health risk and consequently d[id] not deprive [Plaintiff] the

minimal civilized measures of life's necessities." *Carson v. Main*, No. 14-cv-7454, 2015 WL 18500193, at *4 (D.N.J. Apr. 15, 2015) (dismissing plaintiff's Fourteenth Amendment due process claim where neighboring cells shared plumbing pipes and required residents to flush their own toilet to dispose of the neighboring cell's waste). *See also Junne v. Atlantic City Med. Ctr.*, No. 07-5262, 2008 WL 343557, at *10 (D.N.J. Feb. 4, 2008) (dismissing plaintiff's conditions of confinement claim where plaintiff alleged that the jail's lack of a private bathroom and his "need to use the toilet in the presence of a total stranger caused substantial embarrassment," because "plaintiff's embarrassment ensuing from having another person in the cell while plaintiff uses the toilet cannot qualify as a violation of plaintiff's constitutional rights"). Thus, the Plumbing Conditions Claim fails to satisfy the Fourteenth Amendment's objective prong.

44.   As to the subjective prong of the constitutional analysis, Plaintiff does not particularly identify any specific defendant who was aware of the Plumbing Conditions (and when) and who failed to reasonably respond, with the deliberate intent to harm Plaintiff. Thus, the Plumbing Conditions Claim fails to meet the subjective prong as well.

45.   In sum, Plaintiff's claim of "about 2 days" of Plumbing Conditions inconvenience (Complaint § III(C)) does not

offer facts that are necessary to show that she was subjected to a genuine deprivation for an extended period. "There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. 539 n. 21. "[T]he fact that detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment." *Bell*, 441 U.S. at 536. In this case, Plaintiff does not contend that the non-operational toilet was intended as punishment, that she suffered adversely from it, that there was any significant health risk posed by the conditions she endured, that Plaintiff developed physical injuries as a result of the condition, or that a particular defendant demonstrated a sufficiently culpable state of mind with respect to the Plumbing Conditions. Viewing these facts and the totality of the circumstances in the light most favorable to Plaintiff, the Complaint fails to set forth sufficient factual matter to show that the Plumbing Conditions Claim is facially plausible. *Fowler*, 578 F.3d at 210.

46. Accordingly, the Plumbing Conditions Claim will be dismissed without prejudice. Plaintiff shall have leave to amend the Complaint within 60 days after the date this Opinion and Order are entered on the docket, to meet the pleading

deficiencies noted above, if Plaintiff elects to pursue this claim with respect to particular defendants' deliberate indifference to an extreme deprivation that inflicted a substantial hardship on Plaintiff for an extended period of time. The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court in this Opinion and accompanying Order.

## C. Solitary Confinement Claim: Dismissed Without Prejudice

47.   Plaintiff states that she "became angry and overwhelmed and was placed in a body suit[,] stripped of my clothing and shoe strings and placed in a cell all by myself . . . [E]xperiencing these kinds of conditions made me depressed and anxious, as well as suicidal not knowing what else to expect[.] I completely lost my mind . . . [A]t some point [I] had to remain in a cell by myself because I was overwhelmed and became depressed" (hereinafter referred to as "Isolation Claim"). Complaint at 5 and § IV.

48.   The Court will accept as true for screening purposes only the statements in Plaintiff's Complaint.

49.   This Court construes Plaintiff's Isolation Claim to contend that being placed in a cell by herself violated her Fourteenth Amendment right to due process of law.

50.   The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV. A person is entitled to Due Process of law when a government action deprives her of life, liberty, or property. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). To analyze Plaintiff's Due Process claim, the first step is to decide whether she was deprived of a liberty or property interest protected by Due Process. *Fuentes v. Shevin*, 407 U.S. 67, 84 (1972). If not, it is not necessary to consider what process is due. *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972). As averred, Plaintiff would be entitled to Due Process only if she had a protected liberty interest in avoiding "being placed in a cell by myself." Complaint at 5.

51.   Liberty interests protected by the Due Process Clause may arise under the Constitution itself or may be created by state statutes or regulations. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999).

a. *Constitutional liberty interest analysis: "Punishment" and "no legitimate governmental goal"*

52.   In *Bell*, 441 U.S. at 538, the Supreme Court stated that in evaluating the constitutionality of prison conditions implicating pretrial detainees' liberty interests, courts must decide whether a particular condition is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. Conditions or restrictions of pretrial detention that are reasonably related to a legitimate governmental objective do not, without more, amount to punishment: "[I]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think the proper inquiry is whether those conditions amount to punishment of the detainee . . . [A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id*. at 535, 537, 539. *See also Fuentes v. Wagner*, 206 F.3d 335, 341-42 (3d Cir. 2000), *cert. denied*, 531 U.S. 821 (2000).

53.   There is no liberty interest in avoiding segregated confinement arising by force of the Due Process Clause itself. *Hewitt v. Helms*, 459 U.S. 460, 466-67 & n.4 (1983). "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact." *Sandin*, at

478. "[P]retrial detainees do not have a liberty interest in being confined in the general prison population." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007).

54. Moreover, Plaintiff has not, in any event, set forth the required facts from which this Court could infer that CCCF officials placed her "in a cell by [her]self" (Complaint at 5) as a means of "punishing" (as opposed to controlling or protecting) her. She also offers no facts demonstrating that the solitary detention lacked legitimate nonpunitive objectives. To the contrary, Plaintiff's reference to her feelings of "depress[ion][,] anxi[ety][,] and [being] overwhelmed," during which she "completely lost my mind" (Complaint at 5, § IV) suggest that the solitary detention may have had protective or medical objectives aimed at her best interests.

55. Accordingly, Plaintiff has no constitutional liberty interest, arising exclusively from the Due Process Clause, in being free from detention "in a cell all by myself." Complaint at 5. Furthermore, if, as this Court construes Plaintiff's Isolation Claim to suggest, CCCF personnel placed her in a solitary cell for purposes of addressing her mental health issues or preventing Plaintiff from hurting herself or others as a result of her "depress[ion][,] anxi[ety] [and] [feelings of being] overwhelmed" (Complaint at 5, § IV), such purposes would have had legitimate justification. "[T]he Due Process Clause

28

does not in itself subject . . . treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Bell*, 441 U.S. at 547 (courts should accord deference to prison officials in determining whether restrictions imposed upon a pretrial detainee are reasonably related to a legitimate governmental objective). *See also Hancock v. Unknown United States Marshal*, 587 F.2d 377, 378-79 (8th Cir. 1978) (holding that solitary confinement is not necessarily unconstitutional especially when based solely on the prisoner's medical condition).

b. *State-created liberty interest analysis: Atypical and significant hardship*

56. To allege that she possessed a state-created liberty interest, Plaintiff must offer facts showing that her placement in segregated confinement imposed an "atypical and significant hardship" in relation to the "ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. However, "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).

57. "In deciding whether a protected liberty interest exists under *Sandin,* [a court] consider[s] the duration of the

... confinement and the conditions of that confinement in relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). Segregated detention is not unconstitutional *per se*, as long as the conditions of confinement "are not foul, inhuman or totally without penological justification." *Alvarez v. Cnty. of Cumberland*, No. 07-346, 2009 WL 750200, at *5 (D.N.J. Mar. 18, 2009) (quoting *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992) (internal citations omitted)).

58. Here, the Complaint does not indicate: the time duration of the solitary detention, the physical conditions of Plaintiff's cell, Plaintiff's means of personal hygiene during that solitary detention, opportunities for physical exercise or recreation, the frequency of her social interaction with other detainees and/or her environmental stimulation during that time, or the purported purpose for which she was confined to a solitary cell. Plaintiff has not offered any facts to demonstrate "foul [or] inhuman conditions of confinement" (*Young*, 960 F.2d at 364) during the period of isolated detention. The Complaint fails to suggest that the difference in the conditions of Plaintiff's confinement in a solitary cell amount to an "atypical and significant hardship" as compared to conditions she experienced in the general detainee population at CCCF.

59.   Plaintiff therefore has not alleged a protected, state-created liberty interest.[6]

60.   Given that Plaintiff had no protected liberty interest to avoid segregated confinement, she had no Fourteenth Amendment right to Due Process of law, which could have been violated by such confinement. This Court, therefore, is constrained to dismiss the Isolation Claim without prejudice for failure to state a claim upon which relief may be granted.

## IV.   Conclusion

61.   Plaintiff's Overcrowding Claim, Medical Care Claim, Plumbing Conditions Claim, and Isolation Claim will be dismissed without prejudice, with leave to amend the complaint, within 60 days after the date this Opinion and Order are entered on the docket, to meet the claims' deficiencies as noted herein, including: (a) sufficient factual detail for the Court to infer that, *inter alia*, Plaintiff was subjected to genuine privations over an extended period of time, that she suffered from a serious condition, that she endured atypical hardships, that a

---

[6] Plaintiff's contention regarding being "stripped of my clothing [and] placed in a body suit" (Complaint at 5) does not alter this result. "[S]ince detention facilities are fraught with serious security dangers, it is established that routine or random strip searches of detained persons do not violate the Fourth Amendment." *Aruanno v. Allen*, No. 09-1250, 2011 WL 21611351, at *7 (D.N.J. May 31, 2011) (citing *Bell*, 441 U.S. at 560).

particular defendant was deliberately indifferent to substantial risks to Plaintiff's health and safety, and that such defendant's deliberate indifference caused Plaintiff harm; (b) names of the specific party(ies) whom Plaintiff claims are allegedly liable under each particular claim; and (c) the date(s) on which the relevant events occurred. *Mala*, 704 F.3d at 245; *Pliler*, 542 U.S. at 231. The amended complaint may not adopt or repeat any claims that have been dismissed with prejudice by the Court in this Opinion and its accompanying Order.

62.  For the reasons stated herein, the Complaint is: (a) dismissed with prejudice as to the CCCF and (b) dismissed without prejudice for failure to state a claim.

63.  An appropriate order follows.


**June 8, 2017**                              **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge